ERIK McCORMICK, a Minor by his Father and Next Friend, John A. Mc-Cormick, Plaintiff-Appellant, v. MAPLEHURST WINTER SPORTS, LTD., *et al.*, Defendants-Appellees and Third–Party Plaintiffs-Appellants (Gene Anderson, Third–Party Defendant-Appellee).

Second District   Nos. 2—86—1057, 2—86—1072 cons.

Opinion filed February 5, 1988.

Curt N. Rodin, of Anesi, Ozmon, Lewis & Associates, Ltd., of Chicago, for appellant Erik McCormick.

John P. Callahan, of Law Offices of Querrey & Harrow, Ltd., of Geneva, for appellee Gene Anderson.

Gregory E. Rogus, of Leroy A. Garr & Associates, Ltd., of Chicago, for other appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Erik McCormick, appeals from entry of summary judgment in favor of defendants in his action to recover damages for personal injuries allegedly caused by defendants' negligence. Plaintiff asserts that summary judgment was improper because genuine issues of material fact remain unresolved between the parties. Defendants and third-party plaintiffs, Maplehurst Winter Sports, Ltd., and Robert Banasack, individually and d/b/a Maplehurst Winter Sports, Ltd. (collectively referred to hereafter as Maplehurst), appeal from entry of summary judgment in favor of third-party defendant, Gene Anderson, in their action for contribution. Defendants claim summary judgment for Anderson was improper since the issue of contribution had become moot when summary judgment was rendered in their favor in the underlying action brought by plaintiff. We affirm both the summary judgment in favor of Maplehurst and the summary judgment in favor of Anderson.

On February 5, 1983, Gene Anderson took his son and plaintiff, 10-year-old Erik McCormick, to a snow tubing hill owned and operated by Maplehurst in Spring Grove, Illinois. Patrons of Maplehurst snow tube by sliding down a hill while reclining in a truck inner tube. Mechanical tow ropes pull them back up the hill. To use the tow ropes tubers are directed to lie on their backs on the tube, heads facing uphill, and grab the rope as it moves past them. Using that technique Erik completed several successful trips down the hill and back up again. Anderson watched the boys for about a half hour or 45 minutes. He then returned to his car to wait for them.

Sometime after Gene Anderson returned to his car, Erik grabbed

the tow rope and started uphill once again. About halfway up the hill, however, something happened which caused Erik to release his grip on the tow rope. His tube started coasting downhill in the path of other tubers moving upwards with the rope. Injured and unconscious, Erik was still lying across his tube when it stopped moving.

When he later awoke in a hospital Erik had no recollection of what had happened to him. He had not felt anything hit him, did not know if someone had bumped into him or if he had hit something or somebody else, and did not remember whether he had let go of the rope. No other witnesses saw what happened.

Plaintiff subsequently sued Maplehurst alleging that its negligence in the maintenance, operation, and supervision of the snow tubing facility resulted in his injuries. Maplehurst ultimately filed a motion for summary judgment, and plaintiff filed a response. Both the motion and response were supported by extensive deposition testimony. The relevant portions of that testimony are as follows.

Gene Anderson indicated that on the day Erik was injured the rules to be followed by patrons of the snow tubing facility were posted on a board near the top of the tubing runs. He went over these rules with Erik and his son and then stayed near the top of the hill to watch the youngsters and make sure they were using the tow rope correctly. He did not see them having any difficulty with the rope. Anderson recalled that the facility was crowded, but he saw neither any collisions nor any kids behaving in an unsafe or reckless manner. Since he was in his car when the accident happened, Anderson did not see how Erik was injured.

In addition to his testimony that he did not recall what had happened to him, Erik indicated that he had not had a problem with the tow rope before the accident. At no time when he was using it did he see another tuber let go of the rope, fall off the rope, or slide down the hill right underneath the rope. The tow rope worked smoothly, without jerking or side-to-side movement. Erik did not remember hearing any shouting before he became unconscious.

Ed Ziemann was tubing at Maplehurst at the time Erik was injured. He had noticed a group of youngsters, who appeared to be about 10 to 13 years old, engaging in horseplay on the slope. Also, he had been bumped by another tuber during one of his trips up the tow rope shortly before the accident. His testimony indicated that he had once again just started up the tow when he was again bumped by another tuber. He released the tow rope, got off his tube, noticed some congestion further up the hill, and heard that someone had been hurt. Ziemann represented, evidently as a possible explanation of the

bumps he received, that a group of kids seemed to be together and they "were going up the tow rope and it would be a conjecture on my part, leaving go intentionally perhaps and banging into the other ones because they may think it may be cute." The witness, however, did not see how Erik was hurt. He also indicated that he could not recall the order in which all the described events occurred.

Robert Banasack, the president of Maplehurst, testified that although patrons were told over a public address system that only four people were to be on one side of the tow rope at one time, there were usually more than that on the rope. He implied that he announced an unrealistically low number in order to keep the total load on the rope manageable. In his words: "We say four and hope for [no more than] eight is what really happens." Banasack also indicated that horseplay sometimes occurred on both the tubing hill and on the path of the tow rope. When asked how often someone being towed uphill would let go of the tow rope he responded: "There's no way of saying that. You can go days without a problem. You'll find one person who is a problem, who will let go every time." He added that 95% of such incidents were possibly horseplay and that the majority of the problem was not caused by 9- to 11-year-olds but rather by those in their late teens and early twenties.

David Rizoff was the person right behind Erik on the tow rope at the time Erik was injured. While he was tubing that day Rizoff did not see any other tubers using the tow rope improperly or letting go of the rope before reaching the top. He had noticed Erik ahead of him on the tow rope just before Erik let go of the rope but did not recall the rope jerking or bouncing or operating in any unusual manner during that particular trip up the hill. Nor did he recall any horseplay occurring amongst the other tubers on the hill or hear any shouting from higher up the hill. Something bumped against his head, however, and he immediately noticed Erik sliding past him down the hill. Rizoff neither saw plaintiff come into contact with anything else nor noticed anyone other than Erik sliding down the hill where the tow rope was located.

Plaintiff's expert witness, Dr. Alan R. Caskey, testified that, prior to the time his own deposition was taken, he had visited and photographed the Maplehurst facility. He also had reviewed the plaintiff's complaint as well as the deposition testimony of David Rizoff and Robert Banasack and had discussed the deposition testimony of Ed Ziemann with counsel for plaintiff. When asked his opinion of how Erik had been injured, Caskey replied: "[I]t's quite possible that he was impacted on the head by the group of boys that were proceeding

[*sic*] him up the rope tow." Caskey further indicated that Maplehurst had failed to comply with certain national standards for the operation of a tow rope, had improperly instructed patrons on use of the tow rope, and had failed to properly supervise the tow rope.

The trial court granted Maplehurst's motion for summary judgment on the basis that plaintiff had not raised any genuine issue of material fact as to the proximate cause element of its negligence cause of action. In its memorandum opinion the court recognized that plaintiff was attempting to rely on circumstantial evidence but believed plaintiff's inference of proximate cause was based solely on surmise and conjecture. The court noted that an inference of negligence could not properly be based merely on speculation. Therefore, no genuine fact issue had been presented, and defendant was entitled to summary judgment as a matter of law. Without further discussion or explanation the court found that Anderson also was entitled to summary judgment as a matter of law against Maplehurst. Orders effectuating the memorandum opinion were subsequently entered. These appeals followed.

Plaintiff contends that it is reasonable to infer from the deposition testimony that he was injured when he was struck by another tuber as he was being pulled uphill by the tow rope, in much the same manner that Ed Ziemann said he was bumped and the way plaintiff bumped into David Rizoff. Plaintiff further infers that he was struck because of defendants' negligent instruction and supervision. The inferences he has drawn, according to plaintiff's argument, are sufficient to raise a genuine fact issue as to the proximate cause of Erik's injury, and the trial court, therefore, erred in granting summary judgment.

Defendants do not dispute that plaintiff may rely on circumstantial evidence and inferences drawn from such evidence in order to establish the existence of a genuine issue of material fact. They insist, rather, that plaintiff has not met his obligation to present a factual basis for his case sufficient to entitle him to judgment under applicable law. According to defendants' reasoning, the inferences drawn by plaintiff as to how he was injured are purely speculative in nature and thus are inadequate to establish the proximate cause of his injuries. Absent adequate proof that their negligence was the proximate cause of plaintiff's injuries, defendants argue, they were entitled to summary judgment as a matter of law. In our opinion, defendants are correct.

■ While parties contesting summary judgment need not prove their case at the summary judgment stage, they are required to pro-

vide a factual basis to support the elements of their claim. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1059, 473 N.E.2d 444.) When a defendant moves for summary judgment plaintiff has an affirmative duty to present facts and evidence sufficient to show the existence of a cognizable cause of action. (*Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 69, 484 N.E.2d 1273.) Here, plaintiff pursues a cause of action in negligence. Since proximate cause is an element of such an action (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 493, 429 N.E.2d 1267), it was plaintiff's burden to offer enough evidence to show that defendants' negligence was arguably the proximate cause of his injury. We agree with the trial court that plaintiff did not present a sufficient basis to carry its burden.

While negligence may be shown by circumstantial evidence (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396, 457 N.E.2d 18), liability for negligence may not be based upon surmise or speculation as to what might have happened to cause plaintiff's injury. (*Monaghan v. DiPaulo Construction Co.* (1986), 140 Ill. App. 3d 921, 923-24, 489 N.E.2d 409.) The element of proximate cause can be established only when it is shown with reasonable certainty that defendants' conduct caused the injury. (*Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 338, 504 N.E.2d 243.) After carefully reviewing the record of this case we cannot say that the evidence offered by plaintiff established with reasonable certainty that Maplehurst's conduct caused his injury.

■ Plaintiff relies heavily on the testimony given by Ed Ziemann. That testimony, however, both in itself and in light of testimony from other witnesses, is vulnerable. Ziemann testified that he observed congestion and horseplay on the snow hill among a group of tubers who were approximately 10 to 13 years of age and that he was twice bumped by another tuber as he rode the tow rope uphill. For the most part, however, he was not sure of the sequence of events. Other than the one bump he received just before he heard that someone was injured, the activity he described cannot be accurately related to the time of Erik's injury. Also, the congestion Ziemann saw right before he heard about an injury could have been a response by other tubers to Erik's accident just as well as it could have been a cause of that injury.

Ziemann's testimony is also undercut by the testimony of other witnesses. Neither Erik nor David Rizoff felt the rope bouncing or jerking as it moved uphill or saw other tubers let go of the rope and slide down the tow area. Nor did they hear any shouting prior to Erik's accident. Rizoff did not recall any horseplay higher up on the hill or see anyone other than Erik slide past him in the path of the

tow rope. Gene Anderson did not see any collisions or reckless behavior on the tubing hill even though he watched his son and Erik for a half to three-quarters of an hour. While Robert Banasack affirmed that horseplay occurs on the hill, he also testified that "you can go days" without seeing a patron letting go of the rope during the uphill tow and that at any given time the problem usually involved one offender who would let go every time. While Ed Ziemann indicated he saw horseplay by 10- to 13-year-olds, Banasack testified that the majority of the problem came from young people in their late teens and early twenties.

Plaintiff's expert witness, Dr. Caskey, drew the inference plaintiff now urges upon us when he rendered an opinion that Erik had been hit in the head by another tuber. However, while Dr. Caskey had reviewed the depositions of Rizoff and Banasack, his testimony was based heavily on Ziemann's deposition testimony, which he had not even read and which we have found to be, at the very least, open to serious question. In fact, Caskey's knowledge of Ziemann's testimony came only from discussions with plaintiff's counsel. We wonder how sure the witness himself was about his own conclusions. Instead of clearly stating his opinion when asked about the cause of Erik's injury, he replied that it was "quite possible" the youngster was hit in the head "by the group of boys that were proceeding [sic] him up the rope tow." We have not found any testimony as to who was on the rope just ahead of Erik. When asked on what he specifically based his opinion, Caskey replied: "Probably from my reading and information on the number of injuries that have been sustained in the recreation area, similar to this, by blows on the head." Caskey then referred to another case on which he had been consulted which involved an injury on a snow tubing hill. That accident had occurred in Lincoln County, Minnesota, and was described by Caskey as a "similar broken neck, where the snow tuber impacted another individual on the tube." Later in his testimony, however, the witness described the Lincoln County accident as follows:

> "An individual went down the hill with two people on the tube with him and tried to knock over an individual that was standing in the middle of a pile of tubes. He impacted the individual standing in the pile of tubes with his head and his neck was broken."

It seems to us that Dr. Caskey drew conclusions from accident circumstances very different from the circumstances surrounding the injury sustained by Erik. We agree with the comment by the trial court that the expert based his opinion on surmise and conjecture. His opin-

ion must be weighed accordingly. An expert's opinion is only as valid as the basis and reasons for that opinion. *Carter*, 138 Ill. App. 3d at 69.

When viewed as a whole, the conflicting and sometimes confused testimony just summarized is not enough to make it reasonably certain that Erik was struck in the head by another tuber who may have let go of the tow rope while engaging in horseplay. The inferences drawn by plaintiff amount to speculation and conjecture as to how the accident occurred. Since it is not at all clear what happened to him, plaintiff's further inference that his injuries were a result of defendants' negligence must also be characterized as surmise. As noted above, surmise is not an adequate basis for establishing liability for negligence. Nor can an inference of negligence be established on inferences which are themselves speculative in nature. (*Monaghan*, 140 Ill. App. 3d at 924-25.) Based on the record it is not reasonably certain, even for purposes of a motion for summary judgment, that anything Maplehurst did or failed to do caused Erik to be injured. Plaintiff has failed to present an adequate factual basis to sustain his burden of showing proximate cause. When the pleadings, depositions, and affidavits presented in support of the motion fail to establish an element of plaintiff's cause of action, summary judgment is appropriate. *Carter*, 138 Ill. App. 3d at 70.

■ Having resolved plaintiff's appeal favorably to Maplehurst, we turn now to Maplehurst's appeal from the summary judgment entered in favor of third-party defendant, Gene Anderson. In its third-party complaint Maplehurst sought contribution from Anderson on grounds that Erik had been injured as a result of Anderson's negligent supervision of Erik's snow tubing activity and negligent failure to instruct plaintiff in use of the tow rope. Anderson asserted in his motion for summary judgment, which was supported by his deposition, that he had instructed plaintiff in use of the rope and that he had no duty to constantly supervise plaintiff while he was snow tubing. As we noted earlier, the trial court entered summary judgment in favor of Anderson without comment or findings. On appeal Maplehurst insists that summary judgment was improper because the matter of Anderson's liability remained at issue only so long as its own liability was at issue. When summary judgment was entered in its favor in the original cause of action, according to Maplehurst's argument, it was absolved of liability, there was no longer a controversy between itself and Anderson, and the question of Anderson's liability became moot.

Anderson responds that the issues raised in the third-party complaint are totally distinct and separate from the original complaint and

may be resolved independently of that complaint. He insists that the trial court correctly determined from the pleadings and deposition testimony in the third-party action that there were no genuine issues of fact and, therefore, properly granted summary judgment in his favor. While we agree that summary judgment for Anderson was correct, we do not believe it was granted for the reasons urged by Anderson.

Both parties argue from the assumption that the summary judgment resolved the issue of liability favorably to Anderson. We find this assumption to be incorrect. Maplehurst's third-party action was brought pursuant to "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*). Section 302(b) of the Act makes it abundantly clear that a joint tortfeasor has a right to contribution only if he has paid more than his *pro rata* share of the common liability. (Ill. Rev. Stat. 1983, ch. 70, par. 302(b).) In the case at bar Maplehurst was the only defendant in the original action. Thus, had it been found liable, Maplehurst would have been the only party required to pay damages to plaintiff. Maplehurst, however, asserted that Anderson was liable for at least part of any damages which might be awarded to plaintiff and sought contribution accordingly. It is obvious that Maplehurst's claim for contribution is not completely separate and independent of plaintiff's claim against Maplehurst. In fact, the only reason Maplehurst had a right to bring its contribution action was because plaintiff's claim had already been made, and the only condition under which Maplehurst would have been entitled to contribution would be if it had been held liable for more than its share of damages to plaintiff. Since Maplehurst was not held liable for any damages, it had no right to contribution, and questions of Anderson's negligence became irrelevant.

We acknowledge that Anderson argued in his motion for summary judgment that his negligence could not be shown and that he was, therefore, entitled to summary judgment as a matter of law. However, careful perusal of its memorandum opinion persuades us that the trial court granted summary judgment on other grounds. The lower court thoroughly analyzed the proximate cause issue raised by Erik McCormick and Maplehurst. It explained its reasoning and supported its conclusions with numerous citations. After finding that Maplehurst was entitled to judgment as a matter of law, the court summarily found that Anderson also was entitled to summary judgment. We believe the trial court found in favor of Anderson, not because Maplehurst was unable to establish as a matter of law that Anderson had been negligent, but because, as we have concluded here, it was obvious that, as a matter of law, Maplehurst could not sustain its

cause of action for contribution. Maplehurst could not show that it had been held liable for more than its share of the alleged common liability when, in fact, it had incurred no liability at all.

It would seem that if the trial court had analyzed the evidence sufficiently to resolve the question of Anderson's negligence for purposes of a summary judgment motion, that analysis would be reflected in an otherwise thoughtful and thorough memorandum opinion. It is our conclusion that the trial court did not reach the merits of the negligence issues raised by Anderson's motion for summary judgment. Summary judgment was, nevertheless, proper because Maplehurst could not establish a cause of action for contribution.

We note incidentally that third-party defendant Anderson makes the statement in his brief that if we were to reverse the summary judgment granted to Maplehurst in the original action then that action would return to the trial court to stand or fall on its own. While this is true, the summary judgment against Anderson would also have to be reversed since the question of Maplehurst's liability would again raise the issue of Anderson's liability which, as we pointed out above, has not been determined. In *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939, the supreme court explained the reasons for requiring that an action for contribution must be filed in the original action. Among other things, the court said:

> "One jury should decide both the liability to the plaintiff and the percentages of liability among the defendants, so as to avoid a multiplicity of lawsuits in an already crowded court system and the possibility of inconsistent verdicts." (*Laue,* 105 Ill. 2d at 196-97.)

To try this matter as to Maplehurst but not as to Anderson could lead to inconsistent results. See *Hall v. Archer-Daniels-Midland Co.* (1986), 142 Ill. App. 3d 200, 491 N.E.2d 879.

In accord with the foregoing the judgments of the circuit court of McHenry County in favor of defendant Maplehurst and third-party defendant Anderson are affirmed.

Affirmed.

INGLIS and DUNN, JJ., concur.