WILLIAM N. WILSON *et al.*, Plaintiffs-Appellants, v. BELL FUELS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—2763

Opinion filed May 28, 1991.

William M. Freeman & Associates, Ltd., of Lansing, and David A. Novoselsky & Associates, of Chicago (William M. Freeman, David A. Novoselsky, and Linda A. Bryceland, of counsel), for appellants.

Ray, Robinson, Hanninen & Carle, of Chicago (Duane C. Weaver, of counsel), for appellees Kelly Leasing Company and Charlene Troch.

No brief filed for appellee Bell Fuels, Inc.

JUSTICE BUCKLEY delivered the opinion of the court:
This appeal arises from the circuit court's grant of summary judgment in favor of defendants Charlene Troch (Mrs. Troch), operator of the boat, and Bell Fuels, Inc. (Bell Fuels), and Kelly Leasing Co. (Kelly Leasing), owners of the boat in the personal injury action brought by Mr. and Mrs. Wilson. Plaintiffs, Mr. and Mrs. Wilson, filed the original complaint against defendants alleging negligence; more specifically, that Mrs. Troch was negligent both in operating the boat and failing to instruct Mr. Wilson on safety procedures for docking the boat. Plaintiffs appeal from the circuit court's ruling, contending that the circuit court erred in entering summary judgment in favor of defendants by (1) ruling that plaintiffs could not establish that defendants' negligence proximately caused Mr. Wilson's injuries, (2) failing to consider whether the conduct of Mrs. Troch in failing to take appropriate measures to protect Mr. Wilson proximately caused Mr. Wilson's injuries, and (3) failing to allow adequate time for discovery.
On February 8, 1987, Mrs. Troch invited the Wilsons to go for a sightseeing ride on the "Road Pilot," a fiberglass, twin engine 32-foot Carver boat. The Wilsons accepted, and Mr. Wilson changed into crepe-soled loafers in anticipation of the boat ride. Prior to this ride,

both of the Wilsons had been on a boat a few times. The boating excursion began at about 2 p.m. It was a clear, sunny, calm afternoon. Mrs. Troch untied two of the lines which secured the boat to the dock while Mr. Wilson untied the third. Once on the boat, the Wilsons and Mrs. Troch proceeded to the flying bridge area. Mrs. Troch sat in front of the controls, Mr. Wilson sat on her right, and Mrs. Wilson to her left.

After smoothly pulling away from the dock, Mrs. Troch drove the boat around and pointed out various sights to the Wilsons. Throughout the ride, Mrs. Troch was consistently driving the boat at four to six miles per hour. Thereafter, Mrs. Troch approached the dock at Lot 38, the site of the Trochs' future home. As Mrs. Troch maneuvered the boat toward the dock, Mr. Wilson volunteered to tie a line to the dock. Mr. Wilson asked Mrs. Troch where her husband stands while docking the boat. Mrs. Troch replied that he stands on the bow. At that point, Mr. Wilson descended the ladder from the flying bridge, went down onto the bow and stood midway between the bow and the windshield of the cabin near the center cleat on an abrasive-coated area. A metal railing extends from the bow to midship around the perimeter of the boat which is about 25 inches high. Mr. Wilson testified that the railing came about two to three inches above his knee. Mr. Wilson stood on the deck of the boat while Mrs. Troch ran the boat at "dead slow" with no power. Mrs. Troch did not use the throttle as she was docking the boat. Mrs. Troch testified in detail how she guided the boat into the dock at a 45 degree angle and then turned the bow and the stern by putting the starboard engine in forward and the port engine in reverse to allow the boat to coast into the dock.

Mr. Wilson remained standing in the same place near the cleat. Mrs. Troch had no unusual difficulty maneuvering the boat the last 50 feet into the dock. There was no wind and the water was calm. Mrs. Wilson was still seated next to Mrs. Troch when they both turned back to make sure the stern was into the dock. When Mrs. Troch turned back to face the bow, she noticed Mr. Wilson was no longer standing on the boat.

Mr. Wilson testified that from the time he left his seat next to Mrs. Troch until his last memory of being on the boat, he did not notice any changes in speed or direction of the boat and does not recall feeling any movement that would suggest the boat hit the dock. Mr. Wilson does not remember if he attempted to climb over the rail or jump from the boat.

Mrs. Wilson testified that she thought Mrs. Troch was docking the boat in a normal fashion by bringing the boat in slowly, making

sure the bow and the stern moved closer to the dock. Mrs. Wilson stated that from the "feel" of the water, the procedure was not smooth. She later clarified this statement by saying that she realized Mrs. Troch was docking the boat and that the boat would not be traveling at the normal rate of speed and that Mrs. Troch would have to eventually stop the boat.

There is no evidence that the boat ever came into contact with the dock. For example, no one heard, felt or saw anything that would suggest the boat came into contact with the dock. Likewise, there is no physical evidence from the boat that indicates it made any relevant contact with the dock.

When Mrs. Wilson discovered her husband was no longer on the boat, she descended the ladder from the flying bridge and attempted to exit the boat off the stern. The boat, however, according to Mrs. Wilson's own testimony, was parallel to the dock, but was two to three feet away from it. When Mrs. Wilson finally exited the boat, she found her husband unconscious and lying on the dock. Mr. Wilson had blood coming from his ears, mouth, and nose.

▄▄▌ The circuit court found that there was no negligence on the part of Mrs. Troch and granted defendants' motions for summary judgment. Summary judgment should be granted when the pleadings, depositions and affidavits on file clearly show that no issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In deciding whether a material fact exists, the pleadings, depositions, admissions, exhibits and affidavits on file must be construed strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Where the evidence before the court in a motion for summary judgment shows that at trial a verdict would have to be directed, summary judgment is proper. (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.) The nonmovant need not prove his case at the summary judgment stage; he must, however, show a factual basis to support the elements of his claim. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1059, 473 N.E.2d 444, 451.) Thus, facts, not conclusions, must be presented. *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29, 33.

▄▌ The plaintiffs allege Mrs. Troch was negligent. In order to prevail on a claim of negligence, the plaintiffs must offer enough evidence to show that defendants' negligence was arguably the proximate cause of Mr. Wilson's injuries. (*McCormick v. Maplehurst Win-*

*ter Sports, Ltd.* (1988), 166 Ill. App. 3d 93, 98, 519 N.E.2d 469, 473.) Negligence can be shown by circumstantial evidence, and a plaintiff can rely on reasonable inferences which can be drawn from the facts. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396, 457 N.E.2d 18, 21; *Monaghan v. DiPaulo Construction Co.* (1986), 140 Ill. App. 3d 921, 924-25, 489 N.E.2d 409, 411.) Inferences and liability for negligence cannot be based on mere speculation, guess, surmise or conjecture. *Monaghan*, 140 Ill. App. 3d at 924-25, 489 N.E.2d at 411.

The plaintiffs contend that Mrs. Troch negligently operated and maneuvered the boat in a manner which either caused the boat to change direction and/or speed or caused the boat to hit the dock, thus resulting in Mr. Wilson being catapulted from the boat. It is clear, however, from Mrs. Troch's, Mr. Wilson's and Mrs. Wilson's deposition transcripts that none of these eyewitnesses could testify that Mr. Wilson was catapulted from the boat to the dock either as a result of the boat coming in contact with the dock or from some movement of the boat during the docking maneuver.

■ First, none of the witnesses saw the boat come into contact with the dock or heard anything that would suggest such contact. Mrs. Troch testified that the boat was running at a "dead slow speed" and that she did not even use the throttle. There was no wind and the water was calm. Even more telling is Mrs. Wilson's testimony that immediately after learning of her husband's absence from the boat, she descended the ladder from the flying bridge and attempted to disembark the boat at the stern. The stern of the boat, however, was two to three feet away from the dock. The only reasonable inference which can be drawn from this testimony is that the boat did not come into contact with the dock. Second, Mrs. Troch and Mrs. Wilson agree that there was no sudden movement of the boat, and Mr. Wilson has no recollection of what happened after the boat was about five feet away from the dock.

In order to prevail at summary judgment stage, plaintiffs are required to show some evidence of what caused Mr. Wilson to sustain his injuries. The grant of summary judgment, therefore, was proper because plaintiffs have failed to produce evidence of an element of their claim, specifically, that Mrs. Troch's alleged negligence proximately caused Mr. Wilson's injuries.

■ Plaintiffs contend that the issue of proximate cause is properly a question of fact for the jury; normally this is true. Proximate cause becomes a question of law, however, when the material facts are undisputed and there can be no difference in judgment of reasonable men as to the inferences to be drawn from them. (*Merlo v. Pub-*

*lic Service Co.* (1942), 381 Ill. 300, 317, 45 N.E.2d 665, 675; *Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 1000, 473 N.E.2d 531, 535.) The material facts in this case are undisputed. The record is devoid of any evidence as to why or how Mr. Wilson sustained his injuries. There is nothing in the record from which it can be inferred that any action by Mrs. Troch in operating the boat proximately caused Mr. Wilson's injuries. The element of proximate cause is established only when defendant's conduct is shown with *reasonable certainty* to have caused plaintiff's injury. (*Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 338, 504 N.E.2d 243, 246.) In the case at bar, the issue of proximate cause was a question of law, properly determined by the circuit court.

Illinois courts support the conclusion reached by the circuit court. In *Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 100, 468 N.E.2d 477, 482, the court found that plaintiff's statement that the carpet " '[m]ust have gone up a little bit that I tripped over it,' " indicated that the plaintiff did not know with certainty the cause of her fall. The plaintiff's allegations were based solely on the speculation that something must have been wrong with the carpet. Since mere conjecture or surmise is insufficient to establish a genuine issue as to negligence, the court affirmed the grant of summary judgment. (*Koukoulomatis*, 127 Ill. App. 3d at 101, 468 N.E.2d at 482; see also *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 333.) The case at bar is directly analogous to the above case. Plaintiffs assert that Mrs. Troch must have done something wrong because neither of the Wilsons knew with any certainty why or how Mr. Wilson sustained his injuries. Plaintiffs must present *bona fide* facts to withstand a motion for summary judgment; the Wilsons cannot hide behind equivocations and conjecture and expect to prevent the entry of summary judgment. See *Wainscott v. Penikoff* (1936), 287 Ill. App. 78, 4 N.E.2d 511.

■ In *Snell v. Village of University Park* (1989), 185 Ill. App. 3d 973, 978, 542 N.E.2d 49, 52, the plaintiff asserted that the circumstantial evidence, including the close proximity of a defective curb to the location of the accident, the way the plaintiff fell and the position of the body after the fall, supported a reasonable inference that the defective curb caused the decedent to fall and suffer injuries. The record indicated that none of the witnesses testified that the decedent or her bicycle came into contact with the curb, and in fact, three of the witnesses stated that she did not strike the curb. The court held that the evidence failed to support the conclusion that the curb caused the fall. (*Snell*, 185 Ill. App. 3d at 977, 542 N.E.2d at 53.) In the instant

case, the testimony of the three eyewitnesses indicates that there was no contact between the boat and the dock and no noticeable change in speed, direction or sound. The evidence fails to support an inference of probability, rather than possibility, that Mrs. Troch's actions proximately caused Mr. Wilson's injuries. *Snell*, 185 Ill. App. 3d at 977, 542 N.E.2d at 52.

Plaintiffs assert that expert testimony establishes the existence of a genuine issue of material fact. The experts used by plaintiffs, however, fail to properly reconstruct the actions of Mrs. Troch in docking the boat and reach conclusions wholly contrary to eyewitness testimony.

Robert Ricard, an accident reconstruction expert hired by plaintiffs, attempted to reconstruct Mrs. Troch's maneuvering of the boat at the time of Mr. Wilson's accident. Ricard performed two dockings of the Road Pilot. On the approach of both dockings, Ricard placed the gear shift levers in the ahead position with no power being applied with the throttle. Then, in order to achieve what Ricard claims to be a "safe speed approach," he intermittently placed the gear shift levers in neutral.

As is clear from Ricard's experiment, he failed to perform his reconstruction of the docking in accordance with deposition testimony relating to the boat's speed being at dead slow and the port engine being in reverse while keeping the starboard engine in neutral. Further, there is no proof that the boat pivoted as concluded by Ricard based on his reconstruction. In fact, Mrs. Troch's and Mrs. Wilson's testimony reveals that the boat did not move at the time of Mr. Wilson's accident. According to Mrs. Troch, the stern was approximately two to three feet away from the dock when the women turned to look at the stern, and when Mrs. Wilson descended the ladder to alight from the boat, she testified she could not do so because the stern remained two to three feet from the dock.

The rest of plaintiffs' experts' testimonies are similarly based on conjecture, speculation and guess. For instance, Robert Piziali, another of plaintiffs' experts, concluded that Mr. Wilson's body motion was consistent with "an unexpected deceleration of the boat, such as due to an impact or a sudden change in the direction of the bow of the boat." The record is devoid of any evidence of the boat coming in contact with the dock or any sudden change in direction or speed.

■ ■ An expert's opinion is only as valid as the basis and reasons for the opinion. (*McCormick v. Maplehurst Winter Sports, Ltd.* (1988), 166 Ill. App. 3d 93, 100, 519 N.E.2d 469, 474.) When there is no factual support for an expert's conclusions, his conclusions alone

do not create a question of fact. (*Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 1016, 525 N.E.2d 1127, 1130.) There is no factual support that the boat hit the dock or that there was an unexpected deceleration of the boat. The circuit court, thus, correctly gave no weight to these experts' affidavits because their conclusions are contrary to the testimony of the three people on the boat.

Similarly unpersuasive is the testimony of the treating physician, Dr. Settecase, who opined that Mr. Wilson's injuries were consistent with a severe head-first impact of high velocity and inconsistent with a fall from a standing or jumping position. Likewise, Settecase's affidavit fails to establish that Mrs. Troch's alleged negligence proximately caused Mr. Wilson's injuries.

■ The remaining experts, Messrs. Kost, Littell, Vernicek, and Ms. Freeman, do not come to any conclusions or imply Mrs. Troch was negligent. Additionally, the measurements and photographs relied on by these experts were taken no less than four months after the accident occurred. In *Schwartz v. Peoples Gas Light & Coke Co.* (1962), 35 Ill. App. 2d 25, 32-33, 181 N.E.2d 826, 830, the court held that the condition of an object even one month later is not competent evidence, direct or circumstantial, of its condition at the time in question and any conclusions drawn from an inspection after such time has lapsed are purely speculative. Lastly, Mrs. Wilson's affidavit in which she characterizes her husband as a careful man is diluted by the lack of any evidence that Mrs. Troch was negligent. See *McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 48-49, 243 N.E.2d 657, 662.

■ Relying on *Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 448 N.E.2d 1042, plaintiffs assert that Mrs. Troch should have warned Mr. Wilson of the potential dangers of standing on the deck while she was docking the boat. *Williams*, however, is clearly not analogous. In *Williams*, the defendants voluntarily shoveled a path down the center of a stairway and left snow remaining next to the handrails. Plaintiff slipped and fell while walking down the shoveled portion of the stairway. (*Williams*, 114 Ill. App. 3d at 483-84, 448 N.E.2d at 1044-45.) The court stated that no liability exists where there is no duty, but liability can arise from negligently performing a voluntary undertaking. (*Williams*, 114 Ill. App. 3d at 486, 448 N.E.2d at 1046.) The only voluntary undertaking in the case at bar is Mr. Wilson's volunteering to tie a line to the dock, which has nothing to do with Mrs. Troch's alleged duty to warn.

██ Plaintiffs also contend that Mrs. Troch owed a duty to warn Mr. Wilson about the dangers of docking a boat. A thorough search of the relevant case law in Illinois has uncovered no cases concerning a boat owner's duty to warn. An analogy, however, can be drawn from cases which treat a person who is invited upon private land of another as a social guest and therefore, a licensee. "A landowner owes a licensee only the limited duty to warn the licensee of concealed defects that are known to the owner ***." (*Dowen v. Hall* (1989), 191 Ill. App. 3d 903, 907, 548 N.E.2d 346, 348.) Thus, a "licensee must avoid open or obvious danger at his peril." (*Lorek v. Hollenkamp* (1986), 144 Ill. App. 3d 1100, 1103, 495 N.E.2d 679, 681.) A reasonable adult would recognize the dangers of standing on a boat at any time, especially when someone is attempting to dock the boat. Plaintiffs have failed to prove that Mrs. Troch had a duty to warn Mr. Wilson.

██ █ Finally, plaintiffs contend that the circuit court erred in not allowing adequate time for discovery. A trial judge, however, has wide discretion in controlling the scope of discovery. (*Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 154, 334 N.E.2d 96, 102.) Supreme Court Rule 201(c)(1) allows the trial judge the power to "deny, limit, condition or regulate the taking of discovery in order to prevent unreasonable annoyance, expense, embarrassment, disadvantage or oppression." (134 Ill. 2d R. 201(c)(1).) Plaintiffs had over 2½ years in which to develop their case, including an additional opportunity to view and take pictures of the boat. This was ample time in which to conduct discovery, yet plaintiffs only obtained testimony from various experts which was cumulative and unpersuasive. After reviewing the amount of time allowed plaintiffs, we find that the evidence does not indicate that the circuit court abused its discretion in hearing and ruling on defendants' motions for summary judgment.

For the reasons stated above, the summary judgment granted by the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.