2019 IL App (1st) 181079-U

No. 1-18-1079

Order filed December 12, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL DEVER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 L 11791 |
| | ) | |
| LEOPARDO COMPANIES, INC., PRECISION | ) | |
| CEMENT COMPANY INC., K.R. MILLER | ) | |
| CONTRATORS, INC., G & V CONSTRUCTION | ) | |
| COMPANY, INC., DYNASTY PLUMBING GROUP, | ) | |
| LLC, and POLI CONTRACTING, INC., | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | John H. Ehrlich, |
| (Poli Contracting, Inc., Defendant-Appellee). | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The defendant subcontractor plumber was entitled to summary judgment because the plaintiff, an ironworker who was injured at a construction site when his foot slid into a pipe trench, failed to present a factual basis that would arguably entitle him to a judgment where there was no genuine issue as to the material fact that

the defendant did not work at the site before the plaintiff was injured and thus did not create the trench or install the pipe sleeve that caused the plaintiff's injury.

¶ 2    In this interlocutory appeal from his personal injury cause of action, plaintiff Michael Dever, an ironworker who was injured while working at a construction site, challenges the trial court's award of summary judgment in favor of defendant Poli Contracting, Inc. (Poli).

¶ 3    On appeal, plaintiff argues the record shows that a genuine issue of material fact exists regarding whether Poli created the condition that caused plaintiff's injury because some deposition testimony conflicted with Poli's assertion that it did not commence work at the construction site prior to the date of plaintiff's injury.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6    According to the pleadings, depositions and affidavits filed in this matter, plaintiff was injured while working at a construction site at an elementary school. The construction project was divided into two phases. During the first phase, which generally involved building the foundation and installing a perimeter fence, grade beams and caissons,[2] Leopardo Companies, Inc. (Leopardo) was the general contractor. During the second phase, which generally involved the construction of a building on the foundation, K.R. Miller Contractors, Inc. (K.R. Miller) was the general contractor, its project manager was Derek Taylor, and its general superintendent was Paul Ingraham.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] A grade beam is "a sill of structural steel or reinforced concrete atop the foundation of a building and supporting a wall at or near ground level." A caisson is "a watertight chamber used in construction work under water or as a foundation. Merriam-Webster's Dictionary, http://www.merriam-webster.com (2019).

¶ 7    Plaintiff's injury occurred during the project's second phase. At that time, K.R. Miller had subcontracted with Dynasty Plumbing Group, LLC (Dynasty) to do the plumbing work at the site. Dynasty's vice president was Dan Humphries. Dynasty had subcontracted with Poli, a sole proprietorship, to do plumbing-related site work that involved digging trenches for the placement of water main pipes and then backfilling the trenches.

¶ 8    Plaintiff was employed as an ironworker by subcontractor M.A. Steel Erectors, Inc., to install rebar and grade beam. According to his deposition, when his injury occurred in January 2014, the temperature was below freezing and there were mounds of snow and ice on the ground at the work site. The ironworkers did not have a clean and level lay-down area for the rebar because the ground was uneven and rocky and contained holes or trenches that were not backfilled. Plaintiff described the work conditions at the site as "ugly" and "unsafe" but, "to get the job done," the ironworkers "had to do what [they] had to do."

¶ 9    Plaintiff observed only one pipe trench in his work area at the site. The pipe trench was about two feet deep and was not backfilled or "sectioned off" with "barriers." The work area also had a grade beam trench, which was about four feet below street grade level and did not have any ladders. As an ironworker, plaintiff would jump in and crawl out of the grade beam trench several times a day.

¶ 10    On January 9, 2014, plaintiff and two other ironworkers went to the staging area and picked up a 40-foot piece of rebar, which weighed about 160 pounds and had "hooks," *i.e.*, bent "L" shapes, on each end. As they carried the rebar on their shoulders, they walked by the pipe trench and toward the rebar installation location. They had walked only about eight feet when the hook at the front end of the rebar either hit or snagged something, causing plaintiff, who was at

the rear, to lose his balance. He stepped to his left to regain his balance and his left foot slid down into the pipe trench and contacted a black pipe sleeve that was in the trench. Then his left foot slid off the pipe sleeve and became wedged in a crevice between the pipe sleeve and the ground. Plaintiff was still carrying his end of the rebar as he pulled himself out of the trench. Despite the pain he felt in his leg, hip and buttock area, he continued working that day and the next day to finish the job. Thereafter, his condition worsened, and he sought medical treatment. He did not know who had excavated the pipe trench that caused his injury or who installed the pipe sleeve in that trench. Plaintiff had no knowledge or information regarding whether anyone from Poli was present at the work site either on or before the date of his injury.

¶ 11    Subsequently, plaintiff sued Poli and other defendants, alleging causes of action under theories of construction negligence, premises liability and direct negligence. Specifically, plaintiff alleged defendants failed to reasonably inspect and properly operate, manage, maintain and control the premises; failed to provide plaintiff with a safe workplace; failed to warn him of the dangerous conditions; failed to provide adequate safeguards; failed to supervise the work; placed the pipe sleeve in an unsafe location; failed to properly bury the pipe sleeve and backfill the trench in which it was located; failed to properly protect the pipe sleeve; improperly sequenced and coordinated the work; and failed to provide a safe work support.

¶ 12    In its answer, Poli denied plaintiff's allegations of negligence and alleged as affirmative defenses that plaintiff's negligence caused his injuries; something other than Poli's acts or omissions caused plaintiff's injuries; the alleged unsafe condition was open, obvious and well known to plaintiff; any liability assessed to Poli must be reduced by plaintiff's contributory or comparative negligence; Poli had no duty to warn plaintiff because it had no notice of the alleged

unsafe condition; Poli did not owe plaintiff a duty of care because it did not control, direct or supervise the operative details of his work; and plaintiff's alleged injuries were proximately caused by people or entities other than Poli.

¶ 13    Thereafter, Poli moved for summary judgment, arguing the undisputed facts showed that Poli was not present, did not perform any work, and did not control any work conditions at the site on or before the date plaintiff sustained his injury. Furthermore, Poli did not cause or create the alleged hazard and had no notice of its existence. Poli attached several exhibits to support its motion, including the depositions of plaintiff, Anthony Poli and other witnesses; the subcontract between Dynasty and Poli; records indicating the time Poli spent at the site and payments made to Poli for its work; and the affidavit of K.R. Miller project manager Taylor. Poli argued this evidence established that it did not begin any work at the construction site until April 2014, about three months after plaintiff's January 9, 2014 injury. Poli argued that it was entitled to summary judgment as a matter of law because plaintiff could not establish the duty and proximate cause elements of his negligence claims against Poli.

¶ 14    The weekly "project info sheets" and "daily reports" produced by Leopardo, the general contractor during the first phase of the project, listed the contractors performing work for Leopardo. These documents predate the date of plaintiff's injury and do not list Poli as performing any work at the site.

¶ 15    The deposition of Poli foreman Anthony Poli established that he was a licensed machine operator and plumber and had coordinated and scheduled all the work performed by Poli. The subcontract between Dynasty and Poli provided that Poli would commence work at the site on a date "TBD" and its plumbing work was limited to an exterior area five feet away from a

structure at the site. Poli signed the contract on April 10, 2014, and Dynasty signed it on May 22, 2014. Mr. Poli testified that he was Poli's only licensed machine operator for excavation work, he was never present on the job site until April 2014, and Poli's records showed that it did not perform work at the site until April 2014.

¶ 16 He also testified that, because the project involved the Chicago public school system, subcontractors were not allowed to perform work until all the relevant paperwork, which included executed contracts, proof of insurance and permits, was filed. Poli's excavation permit did not permit digging at the site until April 9, 2014. Mr. Poli recalled that when he went to the site to install the water service pipes, the building under construction was already three stories tall and another contractor had poured a concrete floor. He was not at the site during the winter months or when snow was on the ground. Furthermore, Poli was not allowed to drop off materials or store items at the site before April 2014.

¶ 17 Mr. Poli testified that Poli did not use or install any pipe sleeves in performing its work at the site and never installed water service pipes underneath grade beams because that would adversely affect the structural integrity of the building. Water, sewer and storm service lines were installed at least five feet or deeper from the surface. Accordingly, the pipe in the trench that allegedly caused plaintiff's injury was not installed by Poli because the photograph of the scene of the accident showed that the trench in question was significantly less than five feet deep. Finally, Poli, according to its standard practice, immediately backfilled the trenches it excavated once the relevant piping was installed. Consequently, Poli would not have left any trench at a site open for other workers to work in or around.

¶ 18   According to his deposition, Humphries testified that Dynasty did not install any pipe sleeves and he did not know whether Poli installed any pipe sleeves. During the winter, either before or after January 9, 2014, K.R. Miller project manager Taylor informed Dynasty that he was ready for Dynasty to deliver its pipe sleeves. Humphries explained that K.R. Miller required plumbers to deliver their sleeves because K.R. Miller would not let anyone tunnel under the grade beam after it was set in place and the concrete was poured. Accordingly, Humphries went to the site, recalling that there was still snow on the ground, to deliver three PVC sleeves. At the site, Humphries observed Mr. Poli pull up in his red truck that had "Poli" spelled in yellow letters on the side. Poli had one white 8-foot PVC sleeve in the open bed of his truck. Humphries duct-taped the ends of his three sleeves and put the clips on, and—as instructed by Taylor— turned the sleeves over to the ironworkers, who then installed the sleeves into the grade beam. The ironworkers' forms were already in place around the rebars, which were already tied.

¶ 19   Humphries explained that it was common practice for plumbers to give their sleeves to either ironworkers or concrete pourers to install when working near grade beams; no digging was necessary because the ironworkers or pourers installed the sleeves inside the grade beam, not underneath it. Humphries was focused on observing the installation of his sleeves and did not see Mr. Poli do any installation work or know who installed Poli's sleeve. Humphries remembered seeing workers pouring concrete at one end of the site and a track hoe bearing "something like a V3 logo." Humphries did not return to the site until March 2014.

¶ 20   Humphries explained that there were multiple grade beams throughout the project at the site. The grade beams were constructed of rebar in a trench, then formed up and filled with concrete. The pipe sleeves Humphries gave the ironworkers were placed within the rebar

framework, not underneath it. Various trades besides plumbers could install a pipe sleeve for water main service on a project like this. In the spring of 2014, Dynasty hired Palos Electric to dig trenches for Dynasty on this project. Also that spring, Humphries met with Taylor to discuss Poli "not showing up" at the site yet to start installation of the exterior piping. Thereafter, Humphries saw Poli doing excavation work at the site but never saw Poli digging under a grade beam to lay a water main pipe on this project.

¶ 21    In his June 17, 2016 affidavit, K.R. Miller project manager Taylor attested that his employer subcontracted with Dynasty for building and plumbing work at the site, which work included the installation of pipe sleeves. Pipe sleeves created openings in the foundation of a structure for sanitary and storm sewer pipes that would be installed later in the construction process.

¶ 22    Taylor also attested, based on his employer's contemporaneously created payroll business records, that (1) Dynasty's weekly certified payroll reporting form for the week ending January 5, 2014, indicated that Dynasty employee Steven Alleman performed work at the site on December 30, 2013, January 2, 2014, and January 3, 2014, for a total of 24 hours, (2) Dynasty also submitted to K.R. Miller for transmission to the city's public building commission an application for payment for the period ending March 31, 2014, (3) this application indicated that Dynasty had not made any prior application for payment for its work at the project, and (4) the continuation sheet of this application showed in item numbers 7 and 9 that Dynasty's work—described as sanitary-underground, with a scheduled value of $15,615, and storm-underground, with a scheduled value of $6,701—was completed during the period ending March 31, 2014.

¶ 23    Although not mentioned in Taylor's affidavit, the continuation sheet also showed in item numbers 3, 4 and 5 that Poli's work, which was described as site water service, site sewer/drainage, and site sub-drainage, was not completed as of the period ending March 31, 2014. Furthermore, as of the March 31, 2014 period, Poli had not made any application for payment for any work at the project.

¶ 24    In his December 4, 2017 deposition, Taylor testified that he did not recall when Poli was physically on the site, did not know who placed the pipe at issue, and did not recall seeing any Poli employees at the site before the date of plaintiff's injury. After this litigation commenced, Taylor had a conversation with Humphries, who told him that Poli dug the trench at issue. Although Taylor conceded that he did not "know for sure who placed [the] sleeve [at issue, he] would assume that [Poli] did [it] because [Humphries] didn't own any equipment to dig *** the trench, that [Taylor] was aware of." However, Taylor also conceded that if Poli had performed work to install a pipe sleeve, that work would be reflected in Poli's job hour time sheets. Finally, Taylor testified that a decision was made in December 2013 not to backfill trenches that were dug out and Taylor doubted that anyone from Poli was present at that meeting.

¶ 25    K.R. Miller superintendent Ingraham testified in his deposition that his handwritten notes about the work taking place on the site on January 9, 2014, contained the phrase "plumber on site," and was a reference to Dynasty. On that date, pipe sleeves were being installed but actual plumbing work was not being done. Ingraham did not see who placed the pipe sleeves and did not know what company, if any, had delivered the pipe sleeves. He explained that when grade beams were being installed, first a trench was excavated from caisson to caisson before rebar was placed and concrete was poured. According to Ingraham, because the pipe in question would

have been installed underneath the grade beam, backfill would not have been placed over it and concrete would have been poured instead. Furthermore, PVC piping, which is white and plastic, was not normally used as a pipe sleeve for a water main in Chicago, and the pipe involved in plaintiff's injury was black in color. Ingraham did not know if Poli had done any excavation work on the site before the accident date, did not know when Poli was first on the site, and had no reason to believe that Poli caused or contributed to the accident.

¶ 26    In response to Poli's motion, plaintiff argued that summary judgment was precluded because testimony in the record flatly contradicted Poli's assertion that it did not perform any work on the site on or prior to the date of plaintiff's injury. According to plaintiff, the evidence showed that only Poli was responsible for the excavation and backfilling work related to laying pipe sleeves exterior to the structure; Poli was the only plumber on site that had the proper equipment to perform exterior site work; Dynasty's vice president Humphries remembered seeing Mr. Poli at the site with an 8-foot sleeve at the same time Humphries was at the site during the winter to deliver his sleeves for the wall; the time logs kept by K.R. Miller general superintendent Ingraham indicated that a "plumber" was on the site on January 9, 2014, to install water, sanitation, and sewer sleeves; and K.R. Miller project manager Taylor believed, based on his conversation with Humphries, that Poli had installed the sleeve at issue because Dynasty never brought excavation equipment to the site to dig that trench.

¶ 27    In its reply, Poli argued that plaintiff tried to avoid summary judgment by relying on statements taken out of context from the depositions of Humphries, Taylor and Ingraham even though these three witnesses all testified that they did not observe Poli or Mr. Poli working at the

site at any time before plaintiff's injury and did not know who installed the pipe or dug the trench in question.

¶ 28    The trial court granted summary judgment in favor of Poli and against plaintiff, ruling that plaintiff failed to allege facts to make a sufficient showing of the existence of a genuine issue of material fact concerning whether Poli was working at the site at any time prior to plaintiff's accident and injury. The court noted that none of the deposed witnesses indicated they knew that either Poli or Mr. Poli was working at the site at any time prior to plaintiff's injury. Moreover, the documentary evidence concerning the presence of subcontractors working at the site and their applications for payment indicated that neither Poli nor Mr. Poli worked at the site at any time before April 2014, which was three months after plaintiff's injury. Accordingly, the court found that plaintiff's allegation that Poli was working at the site before the date of plaintiff's injury was mere speculation and insufficient as a matter of law to establish a question of material fact to survive Poli's motion for summary judgment. The trial court also found that there was no just reason for delaying either enforcement or appeal of this judgment.

¶ 29                                    II. ANALYSIS

¶ 30    Summary judgment is a drastic means of disposing of litigation and should be entered only when the right of the moving party is clear and free from doubt. *Gilbert v. Sycamore Municipal Hospital,* 156 Ill. 2d 511, 518 (1993). A defendant moving for summary judgment may meet the initial burden of production by either affirmatively showing that some element of the case must be resolved in defendant's favor, or by showing the absence of evidence supporting the plaintiff's position on one or more elements of the cause of action. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill App. 3d 351, 355 (2000). The plaintiff is not

required to prove his case at the summary judgment stage; in order to survive a motion for summary judgment, he must present a factual basis that would arguably entitle him to a judgment. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002).

¶ 31    Summary judgment is only appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The court must construe these documents and exhibits strictly against the moving party and liberally in favor of the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). The court may draw reasonable inferences from the undisputed facts, but where reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by a trier of fact and the motion for summary judgment denied. *Siegel v. Village of Wilmette*, 324 Ill. App. 3d 903, 907 (2001); *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271-272 (1992). We review a trial court's grant of summary judgment *de novo*. *Home Insurance Co.*, 213 Ill. 2d at 315. That is, we perform the same analysis as a trial court and may make our decision on any basis in the record, regardless of whether the trial court relied on that basis. *Guterman Partners Energy, LLC v. Bridgeview Bank Group*, 2018 IL App (1st) 172196, ¶¶ 48-49.

¶ 32    Plaintiff alleged negligence on the part of Poli. To properly state a cause of action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached this duty, and that the plaintiff incurred injuries proximately caused by the breach. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 421 (1992). To survive a motion for summary judgment in a negligence case, the plaintiff must present some factual basis in support of each

element of the cause of action, including proximate cause. See *Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 873 (1992).

¶ 33    Plaintiff claims that Poli negligently failed during its work, which included excavation and the installation of pipes or pipe sleeves, to backfill the trench at issue. On appeal, plaintiff argues that summary judgment should not have been entered in favor of Poli because the record shows clear disputes in the evidence regarding whether Poli excavated the trench and installed the pipe sleeve involved in plaintiff's accident on or before January 9, 2014, the date of plaintiff's injury. Specifically, contrary to Poli's assertion that it began work at the site in April 2014, plaintiff argues that (1) Humphries testified that he saw Mr. Poli at the site carrying a pipe sleeve during the winter months of 2013 to 2014, while there was snow on the ground; (2) Taylor testified that he believed Poli installed the sleeve because Poli had the necessary equipment to do the excavation work whereas Dynasty did not; and (3) Ingraham's notes indicated that a plumber was at the site on January 9, 2014, to install water, sanitation, and sewer sleeves.

¶ 34    Unless a duty is owed, there is no negligence, and whether a duty exists is a question of law for the court to decide. *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992). The issue of the existence of proximate cause is one of fact which is normally determined by the trier of fact. However, at the summary judgment stage, the plaintiff must present affirmative and positive evidence that a defendant's negligence was arguably a proximate cause of the plaintiff's injuries. *Wilson v. Bell Fuels, Inc.*, 214 Ill. App. 3d 868, 872–73 (1991). When the material facts are undisputed and there can be no reasonable difference in judgment as to the inferences drawn from the facts, and there has been no affirmative showing of proximate cause, a plaintiff has failed to establish a genuine issue of material fact; at this point, the issue of proximate cause is a question of law, and summary

judgment is proper as a matter of law. *Chmielewski v. Kahlfeldt,* 237 Ill. App. 3d 129, 137 (1992); *Wilson,* 214 Ill. App. 3d at 873.

¶ 35　Negligence may be established by direct or circumstantial evidence; "circumstantial evidence will suffice when causation is established by facts and circumstances which, *in the light of ordinary experience, reasonably suggest* that the defendant's negligence operated to produce the injury." (Emphasis in original and internal quotation marks omitted.) *Gyllin v. College Craft Enterprises, Ltd.*, 260 Ill. App. 3d 707, 713 (1994). However, the existence of proximate cause cannot be established by speculation, surmise, or conjecture. *Kalata v. Anheuser–Busch Cos.*, 144 Ill. 2d 425, 437 (1991). "The circumstances must justify a reasonable inference of probability of negligence, as distinguished from mere possibility." *Gyllin*, 260 Ill. App. 3d at 714.

¶ 36　Our review of the record establishes that plaintiff's allegation—that Poli performed some excavation or pipe or pipe sleeve installation work at the site before plaintiff's January 9, 2014 injury—is based on speculation and conjecture. The overwhelming evidence in the record shows that there is no genuine issue concerning the material fact that Poli began working at the site in April 2014—about three months after plaintiff's injury. This fact is supported by Mr. Poli's testimony, Poli's payroll documents, the signed subcontract between Dynasty and Poli, Poli's excavation permit, the affidavit of the general contractor's project manager and the general contractor's payroll records, and the consistent testimony of plaintiff, Dynasty's vice president, and the general contractor's project manager and general superintendent that they did not see or recall seeing Mr. Poli or Poli workers at the site performing excavation work or installing pipe sleeves or pipes before plaintiff sustained his injury.

¶ 37    Contrary to plaintiff's assertions on appeal, Humphries testified that he merely saw Mr. Poli deliver one pipe sleeve to the work site at the same time during the winter that Humphries was delivering three pipe sleeves. Humphries, however, clearly testified that he did not see Poli perform any excavation work at that time or install the pipe sleeve. Moreover, Humphries explained that, before the actual plumbing work began, the general contractor required plumbers to deliver their sleeves for installation by ironworkers or concrete pourers because the general contractor would not allow anyone to tunnel under the grade beam after it was set in place and the concrete was poured. In addition, Humphries met with project manager Taylor in the spring of 2014 to discuss the issue that Poli had not been at the site yet to begin its pipe installation work.

¶ 38    Also, Taylor's assumption that Poli installed the sleeve at issue was premised on his understanding that Dynasty did not own the necessary equipment to dig a trench. Taylor's assumption, however, was unwarranted because Humphries testified that Dynasty hired another entity to dig trenches for Dynasty on this project. In addition, Taylor testified that a decision was made in December 2013 not to backfill the trenches already in existence at the site and he doubted that anyone from Poli was even at that meeting. Finally, superintendent Ingraham testified that the statement in his notes about a plumber being on site on January 9, 2014, was a reference to Dynasty, not Poli.

¶ 39    The purpose of summary judgment is not to try an issue of fact, but to determine whether any triable issues of fact exist. *Chmielewski*, 237 Ill. App. 3d at 137. While a plaintiff need not prove the case at the summary judgment stage, enough evidence must be presented to create a genuine issue of material fact. *Atwood v. Warner Electric Brake & Clutch Co.*, 239 Ill. App. 3d

81, 90 (1992). We conclude that plaintiff failed to present any evidence to show that Poli had engaged in excavation or pipe installation work on or before January 9, 2014, the date plaintiff sustained his injury. Accordingly, plaintiff cannot show that Poli created the condition that caused his injury and owed him a duty of care as to that condition.

¶ 40                                III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court that granted summary judgment in favor of defendant Poli.

¶ 42    Affirmed.