2017 IL App (2d) 160698
No. 2-16-0698
Opinion filed November 17, 2017

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| SARA NADEN, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-MR-1175 |
| | ) | |
| THE FIREFIGHTERS' PENSION FUND OF | ) | |
| THE SUGAR GROVE FIRE PROTECTION | ) | |
| DISTRICT; THE BOARD OF TRUSTEES | ) | |
| OF THE FIREFIGHTERS' PENSION FUND | ) | |
| OF THE SUGAR GROVE FIRE | ) | |
| PROTECTION DISTRICT; DAVID LINDEN, | ) | |
| BILL PERKINS, BRENDAN MORAN, | ) | |
| JASON NICHOLS, and MIKE WARNER, in | ) | |
| Their Official Capacities as Trustees of the | ) | |
| Firefighters' Pension Fund of the Sugar Grove | ) | |
| Fire Protection District; THE | ) | |
| INTERNATIONAL ASSOCIATION OF | ) | |
| FIREFIGHTERS-ASSOCIATED | ) | |
| FIREFIGHTERS OF ILLINOIS LOCAL 4748; | ) | |
| JERRY MARZULLO, as Attorney for the | ) | |
| International Association of Firefighters- | ) | |
| Associated Firefighters of Illinois Local 4748 | ) | |
| and/or as Attorney for One or More of the | ) | |
| Members of Said Association; THE SUGAR | ) | |
| GROVE FIRE PROTECTION DISTRICT; | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| SUGAR GROVE FIRE PROTECTION | ) | |
| DISTRICT; and MIKE FAGEL, JOHN | ) | |
| GUDDENDORF, CHRISTOPHER RUCHAJ, | ) | |
| HARRY DAVIS, and DAVID BLANKENSHIP, | ) | |
| in Their Official Capacities as Trustees of the | ) | |
| Sugar Grove Fire Protection District, | ) | |
| | ) | |

| Defendants | ) | |
| --- | --- | --- |
| | ) | |
| (The Firefighters' Pension Fund of the Sugar | ) | |
| Grove Fire Protection District, The Board of | ) | |
| Trustees of the Firefighters' Pension Fund of | ) | |
| the Sugar Grove Fire Protection District, David | ) | |
| Linden, Bill Perkins, Brendan Moran, Jason | ) | |
| Nichols, Mike Warner, The International | ) | |
| Association of Firefighters-Associated | ) | |
| Firefighters of Illinois Local 4748, The Sugar | ) | |
| Grove Fire Protection District, The Board of | ) | |
| Trustees of the Sugar Grove Fire Protection | ) | |
| District, Mike Fagel, John Guddendorf, | ) | Honorable |
| Christopher Ruchaj, Harry Davis, and David | ) | David R. Akemann, |
| Blankenship, Defendants-Appellees). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Sara Naden, is a lieutenant with the Sugar Grove Fire Protection District (District). She applied for a disability pension from the five-member Board of Trustees of the Firefighters' Pension Fund of the Sugar Grove Fire Protection District (Board). The Board held a hearing and denied Naden's application, finding that she was not disabled. Naden sought judicial review of the Board's decision in the circuit court (see 735 ILCS 5/3-101 *et seq.* (West 2014) (Administrative Review Law)), and the court affirmed the Board's determination. Naden appeals to us. She contends that the Board was biased against her and further that its decision was against the manifest weight of the evidence. We agree with Naden's first contention; therefore, we vacate and remand to the Board with directions to hold a new hearing on Naden's application.

¶ 2     Because this is an administrative law case, we directly review the decision of the Board and not the decision of the circuit court. See *Kramarski v. Board of Trustees of the Village of*

*Orland Park Police Pension Fund*, 402 Ill. App. 3d 1040, 1046 (2010). Here, the Board held a hearing, which resulted in the following evidence.

¶ 3    The District hired Naden in 1998 as a part-time, or "paid-on-call," firefighter and emergency medical technician (EMT). In 2000, Naden completed training to be a paramedic at Waubonsee Community College; the District paid for her schooling. In 2001, she was promoted to part-time lieutenant. Due to regional population growth and a corresponding increase in call volume, in 2006 the District transitioned from a part-time staff to a full-time force of roughly 30 firefighters. The District's full-time firefighters were split into three teams, or shifts, with each team working a 24-hour shift every third day. Each shift had a lieutenant. There were only three female full-time firefighters in the District. Naden was one of the first applicants hired back as a full-time firefighter/paramedic in 2006. She was not permitted to keep any rank upon being rehired. However, Naden successfully tested for a full-time lieutenant's position in 2012 and was promoted to full-time lieutenant in February 2013.

¶ 4    In her testimony before the Board, Naden stated that she had been subjected to intense criticism, ridicule, and sexual harassment by her male coworkers—both her subordinates and her superiors—over many years. According to Naden, she had "crying spells" and "anxiety attacks" at work, and she "continually fe[lt] sick to [her] stomach."

¶ 5    On March 10, 2014, Naden sought treatment from her primary care physician for panic attacks. Naden's physician assessed her panic attacks and prescribed medication for anxiety and depression. Naden continued to work regular shifts for the District until March 31, 2014. On April 2, 2014, Naden sent an e-mail to then-District Chief Martin Kunkel and requested a leave of absence from the District, citing her anxiety and her treatment by her coworkers. The District granted Naden 12 unpaid workweeks of leave under the Family and Medical Leave Act of 1993

(FMLA). See 29 U.S.C. § 2612(a)(1)(D) (2012). However, in conjunction with her leave, the District asked Naden to submit a written complaint regarding her allegations of sexual harassment. Naden prepared a 16-page single-spaced report and submitted it to the District on April 8, 2014. Naden's report described dozens of alleged incidents of workplace harassment since 2006. Many of the incidents described harassment by then-Lieutenant Brendan Moran (now a battalion chief) and firefighters Jason Nichols and Mike Warner.

¶ 6     On May 13, 2014, under the Firemen's Disciplinary Act (50 ILCS 745/1 *et seq.* (West 2014)), the District issued Naden a "Notice of Interrogation" stating that, despite her FMLA leave, a formal inquiry would commence at the station the following week. The notice stated that "[t]he purpose of this interrogation is to fully investigate complaints made by Lt. Sara Naden regarding claims of harassment." Naden sought a continuance of the hearing. The District responded by suspending the hearing indefinitely; thus, the interrogation remains ongoing.

¶ 7     Naden did not return to work when her 12 weeks of leave ended; the parties do not dispute that her last reported day of work was March 31, 2014. Naden subsequently applied for workers' compensation benefits, filed a claim of sex discrimination with the Equal Employment Opportunity Commission (EEOC), and sought either a line-of-duty or a non-duty disability pension.

¶ 8     The five-member Board heard additional evidence and unanimously concluded in a roll-call vote that Naden was not disabled and thus not eligible to receive either a line-of-duty or a non-duty pension. Two weeks after the roll-call vote, four members of the Board adopted a 36-page written decision, which set out the members' findings. The Board's fifth member was absent on the date the written decision was adopted; nevertheless, for convenience's sake, and

because all members participated in the roll-call vote, we can treat the written decision as an expression of the entire Board.

¶ 9 On appeal, Naden contends that she did not receive a fair hearing before the Board, and we agree. Ordinarily, during the administrative review of an agency's determination, we grant considerable deference to the agency. We do not reweigh the evidence the agency heard but merely determine whether there was at least some evidence to support its conclusion. See *Danko v. Board of Trustees of the City of Harvey Pension Board*, 240 Ill. App. 3d 633, 641 (1992). However, the issue of whether an administrative hearing was fair is a question of law, which we review *de novo*. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 824 (2009). Thus, we owe no deference to an administrative adjudication where one of the adjudicators was either so biased in favor of or so prejudiced against one of the parties that the outcome was practically a foregone conclusion.

¶ 10 Administrative hearings are quasi-judicial proceedings that must comport with due process. Due process requires that a judge possess neither actual nor apparent bias. As our supreme court has said:

"It is a classical principle of jurisprudence that no man who has a personal interest in the subject matter of decision in a case may sit in judgment on that case.

The principle is as applicable to administrative agents, commissioners, referees, masters in chancery, or other arbiters of questions of law or fact not holding judicial office as it is to those who are technically judges in the full sense of the word." *In re Heirich*, 10 Ill. 2d 357, 384 (1956).

"A personal interest or bias can be pecuniary or any other interest that may have an effect on the impartiality of the decisionmaker." *Huff v. Rock Island County Sheriff's Merit Comm'n*, 294 Ill.

App. 3d 477, 481 (1998). There is, however, a strong presumption of honesty and integrity in the decisions of adjudicators. To overcome that presumption, an applicant must prove that the proceedings were "tainted by dishonesty or contained an unacceptable risk of bias against the app[licant]." (Internal quotation marks omitted.) *Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42, 56 (1981); see also *Goodwin v. McHenry County Sheriff's Office Merit Comm'n*, 306 Ill. App. 3d 251, 256-57 (1999); *Huff*, 294 Ill. App. 3d at 481. Furthermore, "[i]f one decision maker on an administrative body is not completely disinterested, his participation infects the action of the whole body" and renders the resulting decision unsustainable. (Internal quotation marks omitted.) *Kramarski*, 402 Ill. App. 3d at 1047.

¶ 11    We note that in its appellate brief the Board, without citing authority, asserts that Naden's failure to raise her bias claim at the hearing "arguably constitutes waiver of review of the issue." Even if we accepted the Board's unsupported argument concerning forfeiture (*cf.* Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (arguments lacking citation to authority are forfeited)), the United States Supreme Court has explained that judicial-disqualification claims raise a form of structural error, which may be noticed at any time. See *Williams v. Pennsylvania*, 579 U.S. ___, ___, 136 S. Ct. 1899, 1909 (2016).

¶ 12    The record reflects that conflicts of interest were held by a majority of the trustees. Three of the five members of the Board—Chairman Moran and trustees Nichols and Warner—were also firefighters specifically named as antagonists in Naden's 16-page written complaint to the District. In her complaint, Naden accused each of these three trustees of having engaged in repugnant behavior *years* before she left the department and sought her pension. As noted, the District attempted to conduct a formal interrogation into Naden's allegations under the Firemen's Disciplinary Act (see 50 ILCS 745/1 *et seq.* (West 2014)), but when Naden sought a continuance,

the District canceled the hearing, and it was never rescheduled. Thus, the interrogation remained pending and unresolved at the time of the hearing on Naden's pension. (In fact, at oral argument, the attorneys indicated that the inquiry remains unresolved to this day.)

¶ 13    In addition, in 2010, Moran, the Board's chair and Naden's superior officer, was disciplined for making a derogatory comment—calling Naden either "retarded" or "handicapped"—in front of her shift mates. The Board now asserts that Moran was not "disciplined for anything relating to discrimination against [Naden]." We take the Board to mean that Moran was not disciplined for *sex* discrimination or sexual harassment against Naden, and in that regard, we find the Board's claim disingenuous and unpersuasive. Whether conduct amounts to sex discrimination or sexual harassment requires an examination of the totality of the circumstances. See *Trayling v. Board of Fire & Police Commissioners of the Village of Bensenville*, 273 Ill. App. 3d 1, 12 (1995). We are not in a position to determine that the 2010 incident between Moran and Naden was based on sex discrimination; we do not know the totality of the circumstances. However, we also cannot rule out, as the Board apparently did, that the incident was *not* motivated by sex discrimination. But, more to the point, even if Moran's comment was not sexual harassment, the entire episode demonstrated Moran's animosity, hostility, and ill will toward Naden *personally*. See *People v. Patterson*, 192 Ill. 2d 93, 131 (2000) (citing *People v. Vance*, 76 Ill. 2d 171, 181 (1979)). Such antagonistic conduct is *per se* prejudicial to the administration of justice. See *Eychaner v. Gross*, 202 Ill. 2d 228, 280-81 (2002). No person should be tried before a biased adjudicator in any capacity; however, the danger of prejudice is heightened by the greater influence wielded by a board's elected chairperson. See *Danko*, 240 Ill. App. 3d at 644.

¶ 14    Were the disciplinary interrogation resolved by the District before the pension hearing, the Board would be in a much better position to argue that the hearing was not improper. In *Kramarski*, for example, a police officer was turned down for a disability pension and the appellate court rejected her claim that two of the pension board members were biased because they were named in the officer's lawsuit over her termination. See *Kramarski*, 402 Ill. App. 3d at 1046-48. That lawsuit, however, was settled, without a decision on its merits, *before* the officer's pension board hearing. *Id.* at 1047. And, in *Kramarski*, the two allegedly biased trustees abstained from voting on the officer's pension, rendering the effect of their participation in the hearing completely inscrutable. See *id.* at 1046-47. This case is different. Here, the disciplinary interrogation was unresolved and ongoing. Thus, there was something of a "running controversy" between Naden and three of the trustees (see *Taylor v. Hayes*, 418 U.S. 488, 501 (1974))—and particularly between Naden and Moran. See *Ungar v. Sarafite*, 376 U.S. 575, 585 (1964) (explaining that a judge can appear impermissibly biased by becoming "personally embroiled" with a litigant).

¶ 15    Many decisions explain that an ongoing relationship between an adjudicator and a litigant makes the risk of bias unacceptable (see, *e.g.*, *Huff*, 294 Ill. App. 3d at 482) and that, where there is an actual incentive for bias, recusal is *required*. See *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (*en banc*). This case is unlike a situation where a litigant engages in forum shopping, by filing either a frivolous lien against a judge's property or a complaint with the Judicial Inquiry Board, solely to force a judge's recusal. See, *e.g.*, *People v. Smeathers*, 297 Ill. App. 3d 711, 716 (1998). Here, Naden's departmental disciplinary claims were pending long before the three trustees sat in judgment of her pension application. Thus, each of the three trustees named in Naden's complaint had a material, direct, personal interest in

denying her disability claim, whether to discredit her or to retaliate against her. The degree of bias rendered the Board's decision unsustainable; it is therefore vacated.

¶ 16    As we are vacating the Board's decision, we take the time to address a few additional issues in this case. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 56 ("[w]hen appropriate, a reviewing court may address issues that are likely to recur on remand in order to provide guidance to the lower court and thereby expedite the ultimate termination of the litigation"). In particular, Naden has contended that the Board's decision was against the manifest weight of the evidence and, indeed, we are troubled by the quality of the medical evidence the Board relied upon in its decision.

¶ 17    The Illinois Pension Code (Pension Code) states that a firefighter is entitled to receive a line-of-duty disability pension when he or she is found "to be physically or mentally permanently disabled for service in the fire department" as a result of "an act of duty or from the cumulative effects of acts of duty." 40 ILCS 5/4-110 (West 2014). If a firefighter is "[permanently] disabled as a result of any cause other than an act of duty," he or she is entitled to receive a non-duty disability pension. 40 ILCS 5/4-111 (West 2014). The Pension Code defines a "[p]ermanent disability" as any physical or mental condition that "has lasted" or "can be expected to last for a continuous period of not less than 12 months." 40 ILCS 5/4-105b (West 2014).

¶ 18    According to the evidence, Naden met with four physicians, each of whom tendered an independent medical examination (IME) report to the Board. Dr. Stephen Dinwiddie, a forensic psychiatrist, determined that Naden was not disabled at all and did not suffer from any "diagnosable psychiatric illness." Dr. Keith A. Baird, a clinical psychologist, opined that Naden was "not disabled," mainly because she could seek comparable work at a different department. Similarly, Dr. Carl Wahlstrom, a psychiatrist, and Dr. Linda Gruenberg, a clinical psychologist,

opined that, although Naden was disabled as either a firefighter or a commanding officer within the District, or as a commanding officer in any other department, she would not be disabled as a rank-and-file firefighter in another department. A fifth physician also examined Naden; however, due to factual errors in the report, the Board did not consider it, and we need not discuss it.

¶ 19 At least three of the reports the Board did rely on, however—those of Baird, Wahlstrom, and Gruenberg—variously opined that Naden was "not disabled," because she could theoretically work as a rank-and-file firefighter in another department, or that she was "disabled" only because she could not theoretically work with her colleagues in the District in any capacity. The Board's memorandum opinion incorporates these interpretations of section 4-110 of the Pension Code, and the Board posits that "[a] firefighter or lieutenant who is declared able to perform his or her job duties in the same *or another* fire department does not appear to meet the criteria of being disabled for duty." (Emphasis added.) We reject this interpretation.

¶ 20 Under section 4-110 of the Pension Code, a firefighter who is able to perform limited duties as a firefighter, or to perform in some other available position within *the same* department, is not incapable of rendering "service in the fire department" (40 ILCS 5/4-110 (West 2014)) and, thus, is not entitled to receive a disability pension. See, *e.g.*, *Peterson v. Board of Trustees of the Firemen's Pension Fund*, 54 Ill. 2d 260, 265 (1973). That is because, critically, the Pension Code says, "service in *the* fire department"—not *a* fire department, or *any* fire department. It is apparent to us that each physician was relying on his or her own construction of what it means to be disabled in a generic sense and not what it means to be "disabled" under section 4-110 of the Pension Code. The Board then adopted these various *ipse dixit* diagnoses as legal conclusions, despite the fact that these opinions had no real legal basis. In a trial, such testimony would be inadmissible. See, *e.g.*, *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 800 (2009). But

the real danger here, apart from the IME reports, is that Naden's petition was judged by the wrong standard. The Board's analysis would require a disability applicant to exclude the possibility of working in *all* other precincts, districts, and stations. That is both absurd and contrary to the statute's text. The plain language of section 4-110 dictates that a firefighter need prove his or her disability only in relation to his or her current employer—*i.e.*, "the fire department." Thus, if an alternative position that the applicant can perform is available in the same department, and has actually been offered to the applicant, then there are grounds for rejecting the applicant's disability claim. See *Peterson*, 54 Ill. 2d at 265; *cf. Danko*, 240 Ill. App. 3d at 648 (distinguishing *Peterson*). Neither criterion was satisfied here. Accordingly, to the extent that Baird, Wahlstrom, and Gruenberg concluded that Naden was disabled for service with *the District*, each in fact opined in *support* of Naden's disability claim.

¶ 21 We note, too, that to the extent the Board relied on Dinwiddie's findings—which the Board gave "the greatest weight and deference" because his report challenged each of the diagnoses that the others had offered—it is unclear what specifically the Board found at all persuasive. Dinwiddie's report was no more detailed or extensive than the others. Moreover, Dinwiddie could comment on all of the other reports merely because his report was written last. As has been pointed out elsewhere, a pension board's decision can "be against the manifest weight of the evidence where the agency decision selectively relies heavily on one medical expert's testimony to the exclusion of other medical opinions and medical documentation." *Scepurek v. Board of Trustees of the Northbrook Firefighters' Pension Fund*, 2014 IL App (1st) 131066, ¶ 28 (citing *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485 (2007)). We trust that these evidentiary and legal issues will be considered on remand.

¶ 22    Naden's three remaining claims, however, lack merit. First, Naden argues that the circuit court erred when it denied her request to compel the Board to tender tapes of the Board's deliberations in executive session. Again, this is a matter of administrative review, and in that posture the circuit court's review is limited to the record of the agency's proceedings. *Harroun v. Addison Police Pension Board*, 372 Ill. App. 3d 260, 261-62 (2007). Moreover, as the Board correctly notes, disclosure of the tapes would be contrary to section 2.06 of the Open Meetings Act, which states that unless the Board consents to disclosure (and so far it has not) "the verbatim record of a meeting closed to the public [such as an executive session] shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act." 5 ILCS 120/2.06 (West 2014). We determine that the circuit court properly denied Naden's request.

¶ 23    Second, Naden argues that the Board erred when it denied her request to testify in a closed session. However, as the Board points out, taking testimony in such a manner would have violated the Open Meetings Act (see 5 ILCS 120/2 (West 2014)). Furthermore, we agree with the Board that the hearing was not a "personnel" matter excepted from the Act (see *id.*). The Board was not Naden's employer—the District was—and the Board met not to consider Naden's employment but rather to determine her eligibility for a pension. See 5 ILCS 120/2(c)(1) (West 2014). There was no error in the Board's decision not to close that portion of the hearing.

¶ 24    Last, Naden claims that the Board erred when it granted leave to intervene to the firefighters' union, International Association of Firefighters-Associated Firefighters of Illinois Local 4748 (Local 4748). To be precise, Local 4748 was granted limited leave to intervene but was not allowed to present evidence or make argument. Moreover, after the Board granted Local 4748 limited leave, no one from Local 4748 spoke for the remainder of the hearing. Naden

claims that the intervention itself had a "chilling effect" on her ability to prove that she had been subjected to discrimination by her coworkers, who might now avail themselves of legal counsel. But Naden made no offer of proof before the Board to that effect, so the issue is moot. In any case, no statute prevented the Board from granting Local 4748 leave to intervene, and we determine that the Board's decision to do so was not an abuse of discretion. See *Village of Stickney v. Board of Trustees of the Police Pension Fund*, 347 Ill. App. 3d 845, 852 (2004).

¶ 25    In sum, the judgment of the circuit court of Kane County on administrative review is vacated as is the Board's decision. This cause is hereby remanded to the Board with instructions to hold a hearing *de novo* on Naden's application for disability benefits, excluding as adjudicators trustees Moran, Nichols, and Warner.

¶ 26    Vacated and remanded with directions.